# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

JOSHUA SPENCER,

                                           Plaintiff,

   vs.                                                9:12-CV-1721 (GLS/ATB)

DAVID HARRISON, *et al.*,

                                           Defendants.

_____

JOSHUA SPENCER, Plaintiff *pro se*
JONATHAN M. BERNSTEIN, ESQ., Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint, plaintiff alleges that defendants[1] Matthew Hempel and Corrections Officer M. Miller failed to protect plaintiff from assault by another inmate in violation of plaintiff's constitutional rights. (Compl.) (Dkt. No. 1). Plaintiff seeks substantial monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 16). Plaintiff has responded[2] in opposition to the defendants' motion, and defendants have filed a reply. (Dkt. Nos. 23, 24). For the

---

[1] Plaintiff originally named David Harrison, Sheriff of Columbia County, as a defendant. On January 31, 2013, Chief Judge Gary Sharpe dismissed the complaint against defendant Harrison without prejudice. (Dkt. No. 6).

[2] Plaintiff filed his first response on April 29, 2013, but then filed an amended response on May 2, 2013. (Dkt. Nos. 22, 23).

following reasons, this court agrees with defendants that plaintiff has failed to exhaust his administrative remedies and will recommend dismissal of the complaint.

## DISCUSSION

**I.     Facts**

Plaintiff states that he was incarcerated at the Columbia County Jail as a pretrial detainee when the incident that is the subject of his complaint occurred. Plaintiff alleges that he was "jumped" by the co-defendants in his criminal case: inmates Bost and Anderson. (Compl. at 2).[3] As a result of this assault, Captain Davi issued a "Separation Order," for the individuals involved in the altercation. (*Id.* at 2-3). Plaintiff states that from the date of the assault[4] until July 14, 2012, he was held in "Special Management Status." This status required him to be placed in restraints whenever he left his cell block, and he was taken to a recreation yard which was separate from the general population inmates. (*Id.* at 3).

Plaintiff claims that because of the extra security to which he was subjected, the staff was "inconvenienced" to "some degree," resulting in a "dislike" of the plaintiff. Plaintiff claims that he went through a series of "deprivations" due to this dislike. (*Id.*) Plaintiff alleges that on July 14, 2012, he was sitting at the unit table in his own cell block when inmate Anderson was escorted to the library. (*Id.*) Defendant Hempel was assigned to the library on that day. Plaintiff claims that "at some point," his cell block

---

[3] This court will cite to the pages of the complaint as assigned by the court's electronic filing system (CM/ECF).

[4] Plaintiff does not give a date for the assault that caused the separation order to be issued.

door was opened by defendant Miller, "and out of nowhere, inmate Anderson . . . ran into the cell block and brutally attacked the plaintiff . . . causing injury to his face and body." (*Id.*) Plaintiff claims that the assault went on for several minutes until the officers came to "prevent the assailant from further attacking the plaintiff."

Plaintiff states that following the attack, he requested medical assistance, but that he was not allowed to see the medical staff for treatment for more than one week.[5] Plaintiff also claims that no photographs were taken, nor was he taken to an outside hospital for an assessment, resulting in "severe physical suffering."[6] (*Id.* at 3-4).

Plaintiff claims that the door to the library should have been locked at all times when the general population inmates were inside, and it should be "doubly checked" when a Special Management inmate is inside.[7] Plaintiff states that on July 14, 2012, the library door was "*conveniently* unsecured and unmanned," allowing inmate Anderson the ability to run out of the library and across the hall to plaintiff's cell block, the door to which was also "conveniently" opened so that Anderson could attack plaintiff. (*Id.* at 4).

The complaint contains two causes of action. (*Id.* at 4-5). The first cause of

---

[5] Although in this sentence, plaintiff states that he was not allowed to see medical staff for "over a week," on the next page, he states that he was without the benefit of medical attention for "a duration exceeding two (2) weeks." (Compl. at 3-4).

[6] There are no causes of action or defendants associated with a claim of denial or delay of medical care.

[7] The court assumes that inmate Anderson was the Special Management inmate to whom plaintiff is referring because plaintiff, who is the only Special Management inmate mentioned in the complaint, was not in the library.

3

action alleges that plaintiff's constitutional rights were violated when the defendants displayed a reckless disregard for plaintiff's safety in allowing inmate Anderson to enter plaintiff's cell block and assault him. The second cause of action essentially recites the same basis for the alleged constitutional violation.[8] Plaintiff also alleges that the defendants are being sued in their individual and official capacities. (Compl. at 5). As an exhibit to the complaint, plaintiff has attached a copy of what appears to be a misbehavior report that resulted from the incident.

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts

---

[8] Plaintiff bases his claims on the Eighth Amendment, however, the constitutional claims of a pretrial detainee regarding the conditions of his confinement are properly analyzed under the Due Process clause of the Fourteenth Amendment and not the Eighth Amendment. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Pretrial detainees certainly enjoy a "protected liberty interest in safety" and personal security. *Marczeski v. Handy*, No. 3:01-CV-1437, 2004 WL 2476440, at *13 (D. Conn. Sept. 9, 2004) (quoting *Youngsberg v. Romeo*, 457 U.S. 307, 315 (1982)). Thus, the court will assume that plaintiff cited to the correct constitutional amendment as the basis for his claim.

by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

### III. <u>Exhaustion of Administrative Remedies</u>

#### A. **Legal Standards**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal action. This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675. The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that

plaintiff failed to meet the exhaustion requirements. *See, e.g, Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

In *Jones v. Bock*, the Supreme Court held that in order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. 549 U.S. at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must **complete** the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

Because there are still some limited exceptions to the exhaustion requirement, the Second Circuit developed a "three part inquiry" to determine whether an inmate has fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

### B. Application

Plaintiff does not dispute the existence of a grievance program at the jail.[9] In fact, plaintiff concedes that he did not bring a grievance regarding any of the issues

---

[9] Plaintiff was incarcerated in a county facility, thus, the court must examine the grievance procedures applicable at the Columbia County Jail.

raised in his complaint. Plaintiff argues that because the incident involved "a security issue," and a completed assault, that the grievance program could not address, he was not required to bring a grievance prior to filing this action. (Compl. at 2, ¶ 4(a)-(b)). In his response to defendants' summary judgment motion, plaintiff states that

> the plaintiff does not cite the facility's inadequate security procedures as the basis for this action, but rather, that the security staff's intentional neglect in abiding by the proper security procedures that are in effect, resulting in the desired outcome, in that the plaintiff became a victim of the vicious assault by an inmate who had a documented separation order from the plaintiff . . . .
> Therefore, the plaintiff contends that, filing a grievance to challenge an assault that has already occurred (also a non-grievable issue), is not only a moot endeavor, but is also an improper procedure.

(Dkt. No. 23 at 2). Thus, plaintiff argues that he should be excused from the exhaustion requirement because there remains nothing to "justify the filing of an institutional grievance . . . ," and that a grievance would not have been the proper vehicle to resolve a civil rights violation.

Plaintiff is incorrect in his assertion, both under the case law and the facility rules. In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court made it quite clear that the exhaustion requirement applies regardless of whether the plaintiff was alleging excessive force or some other wrong. *See Ruggiero v. County of Orange*, 467 F.3d 170, 173 (2d Cir. 2006) (noting that *Porter* overruled Second Circuit precedent which did not require exhaustion for specific acts of mistreatment). A belief in the futility of exhaustion simply does not excuse failure to exhaust. *Shariff v. Coombe*,

655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009). Although plaintiff alleges that there was nothing that the grievance procedure could have done for him, he is also incorrect in that assertion.

Plaintiff seems to be claiming that the defendants intentionally left the doors open so that Anderson could attack plaintiff. Although there may have been nothing that could be done about the completed assault, bringing a grievance would have caused an investigation of the incident by jail officials. If plaintiff were correct in his belief that the conduct occurred because defendants "disliked" plaintiff, the facility could have taken action so that any future assault on plaintiff would not occur. If plaintiff were really concerned about his safety, the grievance process would have been more effective in protecting him than filing a civil action in federal court. In addition, any investigation of the incident through the grievance process would have produced a record of facts that could have been relevant to plaintiff's federal action. The opportunity for prompt investigation has been cited as one of the great benefits of the exhaustion requirement. *See Woodford*, 548 U.S. at 88-89 (discussing the benefits of exhaustion, including protection of administrative agency authority; promoting efficiency; and providing a useful record for subsequent judicial consideration).

Plaintiff also argues that the defendants' actions were not grievable pursuant to facility policy. However, as an exhibit to their summary judgment motion, defendants have filed the policies and procedures applicable to the grievance program at Columbia County Jail. (Def.s' Ex. C). Defendants have also filed a copy of the Inmate Handbook, setting forth the grievance procedure, together with a receipt signed by

plaintiff for a "Summary of Facility Issued Items," including the Inmate Handbook.[10] (Def.s' Exs. E, G). The Handbook contains a section, entitled "Inmate Grievance Program." (Def.s' Ex. E at 23). In the "Definitions" section of the grievance policy, "Grievance" is defined as:

> a written complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs, medical, the facility itself *or the action or inaction of any person within the facility*.

(Def.s' Ex. C at 1). The only matters that "shall not be the subject of such grievances," are dispositions and sanctions resulting from disciplinary hearings and administrative actions. (*Id.*) There are separate appeal mechanisms for disciplinary hearings and sanctions resulting from those hearings.

Following the factors, stated in *Bownell*, it is clear that a grievance procedure was available to the inmate. Second, there is no indication that defendants did anything to prevent plaintiff from using the procedure, thus, they are not estopped from raising the defense. Finally, there are no special circumstances, excusing plaintiff from utilizing the procedure. His determination that the issue was not grievable is not sufficient to excuse exhaustion. The fact that a disciplinary ticket resulted from the matter only prevents plaintiff from challenging the disciplinary finding or any sanction that resulted from the disciplinary hearing in a grievance.

---

[10] The receipt signed by plaintiff states that he received a copy of the "Jail Rule Book." (Def.s' Ex. G). The court assumes that the "Handbook" (Def.s' Ex. E) is the same as the Rule book referred to in Exhibit G. In any event, plaintiff does not deny receiving the relevant information about the grievance procedures. In order to argue that something was not a "grievable" issue, he would have had to have seen the rule book or the handbook to make such a determination.

The definition of a "grievance" quoted above from the Jail's policy statement makes it clear that the actions or inactions of staff are the valid subjects of a grievance. Plaintiff's claim is that defendants did not like him because he caused them "inconvenience" due to his security status, and that they intentionally left the doors open so that inmate Anderson could attack plaintiff. Plaintiff claims that the defendants failed to protect him from the assault. Clearly, plaintiff is challenging action or inaction by defendants that caused him injury. As stated above, the law is quite clear that plaintiff must file a grievance, even if the grievance program cannot afford him the same relief that he would obtain in a civil rights action. *Giano v. Goord*, 380 F.3d at 675. Thus, plaintiff may not be excused from the exhaustion requirement, and this court must recommend granting defendants' motion for summary judgment, dismissing this action for failure to exhaust administrative remedies.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 16) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 8, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge